IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JOHNNY CROUSE and
GAIL CROUSE,

                Plaintiffs,

v.                             CIVIL ACTION NO.   5:12-cv-04861

ERIE INSURANCE COMPANY
& CASUALTY COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Erie Insurance Property & Casualty Company's Motion for Summary Judgment Concerning Plaintiffs' Punitive Damages Claim* ("Def.'s Mot.") (Document 15). After careful consideration of the motion and the entire record herein, the Court finds that the motion should be **granted**.

*I.*

On the morning of July 20, 2010, the Brenton, West Virginia, home of Plaintiffs, Johnny Crouse and his wife Gail, caught on fire. The fire damaged a substantial portion of the house, including the roof, the outside cinder block walls, and the flooring on the first floor of the house leading to the stairs to the third floor. No one was in the home at the time of the fire. The fire resulted in a total loss of the home, and the record reveals that the Fire Marshall investigated the blaze. It was determined that the fire began in the basement and the Origin and Cause Investigator opined that the fire was an act of arson.[1] At the time of the fire, Plaintiffs' home was

---

1   The record is flimsy on the facts relating to this investigation. However, it does not appear that any person or

covered by Defendant Erie Insurance Property & Casualty Company's homeowners insurance policy number Q53-5800509. The Erie policy provided $184,000 in property protection for a dwelling and $138,000 for personal property loss caused by, among other things, fire. Despite its "questions" relative to the "cause and origin of the fire," Defendant paid Plaintiffs, pursuant to W. Va. § 33-17-9, the policy limit for their dwelling coverage in two installments: $74,840.13 to the Small Business Administration for the mortgage on the home and $109,159.87 to Plaintiffs. (Def.'s Mot. at 2 n.1.)[2] Plaintiffs also made a claim for personal property loss for $124,388.39. The parties dispute this claim. As a result, Plaintiffs initiated this civil action to recover the insurance benefit for the personal property allegedly lost during the fire.[3]

The parties' dispute of the personal property claim revolves around the items of personal property allegedly lost. Plaintiffs shared the Brenton home with their adult son, his wife, and their grandson. At the time of the fire, only the Plaintiffs' grandson continued to live in the home.

---

persons were arrested for any criminal conduct relating to the fire. Additionally, in an Interrogatory Response, Plaintiffs assert that at trial they will call their son, Brian Crouse, who "may possess a degree of some sort in electrical engineering . . . [who] was able to look at the house after the fire and see really clearly where the fire started and had an opinion as to what caused the fire (which was electrical wiring)." (Def.'s Mot. Ex. 2 Plaintiff's [sic] Response to Defendants' [sic] Interrogatories ("Pls.' Interrogatory Resp.") (Document 15-2) at 20.)

2    West Virginia law provides that:

> All insurers providing fire insurance on real property in West Virginia shall be liable, in case of total loss by fire or otherwise, as stated in the policy, for the whole amount of insurance stated in the policy, upon such real property; and in case of partial loss by fire or otherwise, as aforesaid, of the real property insured, the liability shall be for the total amount of the partial loss, not to exceed the whole amount of insurance upon the real property as stated in the policy. This section does not apply where such insurance has been procured from two or more insurers covering the same interest in such real property.

W. Va. Code § 33-17-9.

3    Plaintiffs filed this claim on July 20, 2012, in the Circuit Court of Raleigh County, West Virginia. Defendant removed the case on August 29, 2012, by invoking this Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332. There is no dispute that the requisite jurisdictional amount is satisfied in this matter and that the parties are citizens of different states.

In the weeks prior to the fire, Plaintiffs had moved some of their belongings out of the Brenton, West Virginia, home to their new house in Clearfork, West Virginia. The record contains conflicting accounts of just how much of their personal property was removed. In a March 11, 2011 deposition taken prior to the initiation of this civil action, Plaintiff Johnny Crouse testified as follows:

> Q. Now, I understand that you had pretty much moved out prior to the fire?
> A. Yes, ma'am.
> Q. So you had pretty much moved the majority of your belongings out of the house prior to the fire?
> A. Yes, ma'am. In fact, a lot of the stuff was moved into the garage, too. So I'm saying we had probably between 75 and 80 percent moved out.
>
> . . .
>
> Q. Now, I understand that you had pretty much moved out, correct, at the time of the fire?
> A. Yes.

(Def.'s Mot. Ex. 3 Transcript of Examination under Oath of Johnny Crouse (Document 15-3) at 48, 58-59.)[4] After moving out of the Brenton home, Plaintiffs lived in their new house for three or four days before traveling out of state for two weeks. In their response to Defendant's Request for Admission, Plaintiffs admit that they were not living at the home at the time of the fire. However, in contrast to earlier testimony, Plaintiffs deny that they had removed 75% to 80% of their personal property from the Brenton home. (Def.'s Mot. Ex. 5 Plaintiff's [sic] Response to Defendants [sic] Request for Admission (Document 15-5) at 1-2.) Instead, in a response to an interrogatory question, Plaintiffs state that

---

4    Mr. Crouse also testified that his previous home was destroyed by a fire in 1995; that the fire started as a result of electrical wiring and that he received the insurance benefits provided by the homeowners' insurance policy covering the home.

3

> We really hadn't moved a whole lot into the new home at Clearfork. We had moved a few items in at the beginning of July which were just enough to live there overnight. . . . We also had about 1 and ½ bedroom suites moved over, a loveseat, two end tables and a coffee table, two Bombay shelves, two lamps from our living room, [and] a secretary's desk and chair[.]"

(Pls.' Interrogatory Resp. at 17.) Plaintiffs also explain that the Clearfork home came with kitchen and laundry appliances, as well as kitchen furniture. Plaintiffs also contend that all of the items in the Brenton home were their personal property, but they were uncertain about the items their grandson may have moved into the home. (*Id*.) Relative to an inquiry about the items in the garage, Plaintiffs responded with the following:

> **Answer**: I don't necessarily 'contend' that there was very much at all stored in the garage . . . when the house burned. Nonetheless, I believe the garage contained a dishwasher, which we had moved from the Clearfork house after buying it, a lawn mower, maybe a couple of Weed-Eaters, an extension ladder, and possibly a step ladder, some general tools and odds and ends, some boxes or buckets of nails, bolts, nuts, screws, and things like that as well as an old refrigerator that did not work correctly and a socket set. Apart from that, there may have been a few miscellaneous things in the garage. At this point in time, I'm not sure that I can remember everything that was in the garage. The twelve-piece china set may have been in the garage at the time of the fire.

(Pls.' Interrogatory Resp. at 16.) However, there is nothing in the record to identify whether the garage was attached to the home, whether its contents were destroyed or whether the structure received substantial fire damage. Instead, Plaintiffs' Interrogatory Response contains a table of all of the items allegedly lost in the fire, including multiple computers and accessories, multiple gaming systems and games, various cooking tools and utensils, bedroom furniture, kitchen appliances, televisions, hunting clothes and equipment, dentures, HVAC units and various items

4

of clothing. In sum, Plaintiffs calculate the loss of these items at $117,347.54 before taxes. (Pls.' Interrogatory Resp. at 2-16.)

As a result, in their Compliant, Plaintiffs allege, *inter alia*, that Defendant has failed to act in good faith with respect to paying for its lost contents, acted willfully, fraudulently, intentionally and in bad faith with regard to the payment of the proceeds under the policy, breached the contract with regard to the insureds' benefits and breached the implied duty of good faith and fair dealing. (Notice of Removal, Ex. 1, Complaint (Document 1-2)). Relevant to this motion, Plaintiffs seek punitive damages as a result of Defendant's alleged conduct.

In the instant motion, Defendant Erie Insurance contends that it is entitled to summary judgment on Plaintiffs' claim of punitive damages because there is no genuine dispute of material fact that it acted with a malicious intention to injure or defraud when it refused to pay on Plaintiffs' claim for personal property coverage. According to Defendant, it was justified in refusing Plaintiffs' personal property claim because it had conflicting information relating to the quantity of personal property that remained in the home prior to the fire.

*II.*

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is

5

sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. (*Id.*) The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in h[er] favor." *Anderson*, 477 U.S. at 256. In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### III.

A review of the docket reveals that Plaintiffs have not offered any evidence of Defendant's actual malice in an attempt to demonstrate a genuine dispute of material fact. Indeed, although represented by counsel, Plaintiffs have elected not to challenge Defendant's motion. A party is obligated by Rule 56 to support its assertions of a dispute, or the lack thereof, with citations to the record. Specifically, Rule 56 of the Federal Rules of Civil Procedure requires that,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).  A non-moving party's failure to file an opposition to a motion for summary judgment does not automatically lead to certain success of the movant's motion.  In such situations, "the district court 'must review the motion even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'"  *Robinson v. Wix Filtration Corp*, LLC, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993.)  Additionally, if a party abandons its obligation by "fail[ing] to support an assertion of fact or fail[ing] to properly address another party's assertion of fact," a district "court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."  Fed.R.Civ.P. 56(e).

Plaintiffs' opposition was due on June 18, 2013.  To date, Plaintiffs, through their counsel, have not litigated their interests since this dispositive motion was filed.  Given the length of time which has expired since this deadline, the Court finds that affording Plaintiffs an additional opportunity to address Defendant's assertions of facts is inappropriate.  Accordingly, the Court has considered Defendant's motion and the evidence offered in support thereof.  (*See* Fed.R.Civ.P. 56(c)(3)) (indicating that when ruling on a motion for summary judgment, a district court does not have to undertake an independent search of the record; instead, a district court "need consider *only* the cited materials," even though it maintains the discretion to consider other materials in the record.) (emphasis added).  Consequently, the Court considers Defendant's assertion of facts as undisputed, for the purpose of this motion, and finds that Plaintiffs' neglect of

7

their obligation to offer evidence, or rebut Defendant's assertions, has proven to be fatal to the success of their claim for punitive damages.

*IV.*

Defendant argues that summary judgment is proper on Plaintiffs' request for punitive damages. According to Defendant, an insurance company is not liable for punitive damages for refusing to pay a claim unless the refusal was accompanied by a malicious intent to injure or defraud. Defendant asserts that there is no genuine dispute of any material fact demonstrating that it acted with actual malice. Defendant argues that Mr. Crouse testified during his deposition that only twenty to twenty-five percent of his family's personal property was in the house at the time of the fire. However, in response to a request for an admission, the Plaintiffs now deny that statement. Defendant argues that the inconsistent statements "alone establish that there was a lack of malice in Erie's actions." (Def.'s Mot. at 5.) In a lone sentence, Defendant asserts that Plaintiffs "cannot establish any basis by which a jury could find that [it] acted with deliberate and intentional malice." (*Id.*)

In West Virginia, absent an independent intentional tort committed by the defendant, punitive damages are not generally available in an action for breach of contract. *Berry v. Nationwide Mutual Fire Ins. Co*., 381 S.E.2d 367, 374 (W. Va. 1989) (citing *Hayseeds, Inc. v. State Farm Fire & Cas*., 352 S.E.2d 73, 80 (W. Va. 1986)). However, in cases like this one, where an insured seeks to recover for its insurer's refusal to pay its claim, an exception allowing for punitive damages is found. The West Virginia Supreme Court of Appeals instructed, in *Hayseeds,* that "an insurer is not liable for punitive damages by its refusal to pay on a claim unless such refusal is accompanied by a malicious intention to injure or defraud." (*Hayseeds*, 352

8

S.E.2d at 80.) In an effort to establish a "bright line standard, [which is] highly susceptible to summary judgment for the defendant," the *Hayseeds* court held that punitive damages may be awarded for an insurer's failure to settle a claim where a plaintiff meets the "high threshold of [establishing] actual malice in the settlement process." (*Id*. at 80-81.) The court's use of "actual malice" meant that a plaintiff had to demonstrate that the insurance "company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." (*Id*.) The Court cautioned that "[u]nless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury." (*Id*. at 81.) Moreover, an insurance company's "preconceived disposition to deny the claim . . . d[oes] not rise to the level of malice" that is sufficient to support an award of punitive damages. (*Id*.)

Upon a review of the exhibits submitted with Defendant's motion and the entire record in this matter, the Court finds no evidence indicative of actual malice in this case. In making this finding, the Court assumes, as Defendant implicitly has in its motion, that Plaintiffs' personal property claim was proper. Nevertheless, there is no evidence in the record before this Court that Defendant's denial of Plaintiffs' claim rises to the level of an intentional injury. Instead, the only proffered evidence before this Court reveals that Plaintiffs made a claim for personal property which was allegedly destroyed in a house fire, that the insurance company was aware of the fire and that Plaintiffs' home and contents were damaged, that the insurance company received conflicting statements from the Plaintiffs regarding the amount of property in the home at the time of the fire and that Defendant has refused to pay the contracted for coverage based on this inconsistency. Drawing the reasonable inferences from these facts in the light most favorable to

the non-moving party, the Court cannot find that this evidence establishes actual malice. Instead, the evidence exhibits the parties' disagreement over the proper award of insurance proceeds under the policy for personal property destroyed in the fire. (*See North American Precast Inc., v. General Casualty Company of Wisconsin*, 413 F.App'x 574, 579 (4th Cir. 2011) (unpublished decision) (finding that an insurance company's denial of damage claim did not render it liable for punitive damages where company was aware of the claim, did not believe the policy provided for the claim and denied the claim; court found evidence of a dispute of coverage, rather than actual malice). Undoubtedly, the record reveals that in the months after the fire, Mr. Crouse provided testimony, during the insurance company's deposition, that at the time of the fire his family had substantially moved out of the home. He specifically indicated that they had moved 75 to 80% of their property out of the home prior to the fire. He also mentioned that several items were stored in the burnt home's garage before the fire. However, in the course of this litigation, Plaintiffs have explicitly denied Mr. Crouse's statement concerning the percentage of their belongings removed from the home. By the contradictory statement, Plaintiffs indicate that they had only moved out various items to allow them to stay in their new home overnight and that remaining in their house was a host of their possessions which had a combined value of nearly $120,000. These representations are in stark contrast to Mr. Crouse's earlier testimony, and likely gave the insurance company pause regarding the extent of personal property damaged. This substantial question regarding the value of any insurance proceeds awarded as a result of the homeowners' claim does not, in and of itself, satisfy the "high threshold" required to demonstrate actual malice. Plaintiffs have not offered any evidence to demonstrate malicious intent or intentional injury. Instead, the unchallenged record as presented by Defendant reveals "some evidence" that

Defendant has a "preconceived disposition to deny the claim" based on Plaintiffs inconsistent statements. However, as the West Virginia Supreme Court of Appeals found in *Hayseeds*, such disposition does not rise to the level of actual malice. This is especially so, where it is not a foregone conclusion that the entirety of the insured contents of Plaintiffs' home was actually destroyed in the fire.

Therefore, given the status of the record, the evidence therein and all inferences to be drawn from that evidence, together with Plaintiffs' failure to offer any evidence to demonstrate that Defendant acted with actual malice in its refusal to pay its personal property claim, the Court finds that there is no genuine dispute as to any material fact relative to Defendant's liability for punitive damages. Consequently, Defendants' motion should be granted.

*V.*

For the reasons stated herein, the Court does hereby **ORDER** that *Erie Insurance Property & Casualty Company's Motion for Summary Judgment Concerning Plaintiffs' Punitive Damages Claim* (Document 15) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 13, 2013

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA